## CHICAGO & N. W. RY. CO. v. UNITED STATES.

### No. 46262.

#### Court of Claims.

#### Jan. 5, 1948.

A. Rea Williams, of Washington, D. C. (Nye F. Morehouse and P. F. Gault, both of Chicago, Ill., on the brief), for plaintiff.

Henry Weihofen, of Washington, D. C., and Peyton Ford, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

JONES, Chief Justice.

This case turns on whether the defendant was entitled to reduced railway rates on certain shipments of coal, sulphur, lime, and gasoline during the war period. The defendant paid the reduced rates claiming the shipments were "military or naval property of the United States moving for military or naval and not for civil use" by virtue of Section 321(a) of the Transportation Act of 1940.[1]

Plaintiff claims the regular commercial rates should have been paid and it sues for the difference.

The details are set out in the findings of fact.

Plaintiff now concedes that in the light of the decision in Northern Pacific Railway Co. v. United States, 330 U.S. 248, 67 S.Ct. 747, 750, the reduced rates should apply to the gasoline shipped.

The only issue remaining is in respect to shipments of coal, sulphur, and lime to certain ordnance plants. At various times during 1942 and 1943 a number of carload shipments moved over plaintiff's railroad consigned to the Commanding Officer, Badger Ordnance Works, Baraboo, Wisconsin. During the same period shipments of lime moved from Mosher, Missouri, to the commanding officer of an ordnance plant at Ankeny, Iowa, and in a similar manner gasoline from California to the Defense Supplies Corporation in Indiana.

The Badger Ordnance Works was a government-owned facility, operated by the Hercules Powder Company, and was engaged in manufacturing smokeless powder. All its products were the property of the United States for military use.

The coal shipped was for use in the powerhouse to produce heat, steam and hot water, the sulpher for making an ingredient of smokeless powder, and the lime was shipped to the Ankeny, Iowa, plant, a similar contractor-operated, government-owned facility engaged in manufacturing small

---

[1] 49 U.S.C.A. § 65(a), 54 Stat. 954.

arms ammunition for military use. The lime was used for treating waste water and for softening water for use in connection with the plant's operations.

We think these shipments clearly fall within the purview of the decision and the test laid down in Northern Pacific Railway Co. v. United States, supra. In that case the shipments included copper cable for use in installing equipment on a cargo vessel being built by a shipbuilding company, the vessel to be used as a naval auxiliary for defense against magnetic mines; lumber to be used in the construction of a munitions plant by contractors under army supervision; bowling alley equipment for a naval air base, and liquid asphalt consigned to the Civil Aeronautics Authority for use in constructing runways for an airport to be utilized in national defense.

In holding these items were military or naval property within the meaning of Section 321(a) the court used the following language:

"It is the relation of the shipment to the military or naval effort that is controlling under § 321(a). The property in question may have to be reconditioned, repaired, processed or treated in some other way before it serves their needs. But that does not detract from its status as military or naval property. Southern Pacific Co. v. Defense Supplies Corporation, D.C., 64 F. Supp. 605. Within the meaning of § 321(a) an intermediate manufacturing phase cannot be said to have an essential 'civil' aspect, when the products or articles involved are destined to serve military or naval needs. It is the dominant purpose for which the manufacturing or processing activity is carried on that is controlling."

We can see no substantial distinction between materials shipped for the construction of a plant for military or naval use and materials for the operation of such a plant.

We find that the materials were shipped for military or naval use within the meaning of the statute.

It is not necessary to pass on the question of whether the acceptance by plaintiff of the reduced rates, without protest, precludes plaintiff's recovery.

It follows that plaintiff is not entitled to recover, and the petition is dismissed.